**Nellie Wright BUSTOS, Appellant,**

v.

**Luis R. BUSTOS, Appellee.**

**No. 5117.**

Court of Civil Appeals of Texas.

El Paso.

July 13, 1955.

Rehearing Denied Sept. 28, 1955.

Fryer, Milstead & Luscombe, El Paso, for appellant.

J. J. Rey, El Paso, for appellee.

FRASER, Justice.

This is an appeal from a decision of the District Court of El Paso County, Texas, 65th Judicial District, granting a divorce to plaintiff, Luis R. Bustos, from Nellie Wright Bustos.

The parties were married in Baltimore, Maryland, in October of 1952, at which place plaintiff was stationed while serving in the army. These parties lived together about a month, when defendant came to El Paso County, where she has since resided.

The petition alleges as grounds for divorce that defendant has refused to return and live with plaintiff as his wife, and stated that she did not love him and would not return to him as his wife, and that

such conduct on the part of defendant has caused such pain, anguish and suffering to plaintiff's feelings and pride as to render further living with defendant insupportable.

Defendant denied the allegations and stated that she had always wanted plaintiff to come home and live with her, which, as the record shows, meant coming to live in her mother's home. Plaintiff alleged that he had importuned defendant to come and live with him at the various places where he was stationed, but that she refused. In its findings of fact the court has found that defendant has continually refused to join her husband and set up or make a home for him, insisting that he may come and live with her and her mother, and that she has so refused and now refuses to join plaintiff at whatever station he may be sent under army orders, although continuing to draw an allotment from the army as plaintiff's wife. The court further found that these acts constituted such cruel treatment as to render their further living together insupportable. There are no children.

We agree with the trial court's disposition of this case. It cannot be denied that a man serving in the armed services is subject in all his movements to the orders of his commanding officer, and cannot, or could not as a man who was engaged in private employment, make frequent trips home, participate in the enjoyment and supervision of the home. He is for all purposes immobilized. We think that a man, under these conditions, would naturally be much more troubled and worried by his wife's continued refusal to join him at his various stations than a man in private industry or privately employed would be. We believe that the preservation of the marriage relationship itself is better served if the wife under cir-

cumstances similar to these be made to realize that she must make a reasonable effort to join her husband and make a home for him, as such is the very essence of the marriage contract. The story of Ruth, in the Holy Bible, and her statements, although made to her mother-in-law, are not without useful significance in a case of this nature.

In the case before us the defendant has continued to draw a generous allotment, and thereby be supported by the plaintiff, but on her part has been unwilling and is apparently still unwilling to live with him at the various stations to which he might be sent. She apparently wishes to continue to draw the sum of $137.50 per month without doing more than invite plaintiff to live with her and her mother at Ysleta. It must be noted here too that plaintiff has stated that he was making the army his career. For these reasons we think that under the circumstances of this case, where a man is making the army his career and the defendant wife is unwilling to go with him and share that career by living with him, being a wife to him, making a home for him, that such conduct on her part constitutes cruelty of such a nature and sufficient amount as to render their further living together insupportable. Where a husband is a member of the Armed Forces it is the wife who must make the adjustments, he cannot. It is the natural prerogative of the husband as the breadwinner to designate the location of the home.

In conclusion, it might be said that it is elementary that all possible presumptions must be presumed in favor of the trial court's findings, and here the trial court has found that defendant's conduct is such as would entitle plaintiff to a divorce. The decision of the trial court is accordingly affirmed.